**jar**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DOYLE D. SHOOK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 05-4107-JAR |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

The Commissioner of Social Security ("Commissioner") denied plaintiff's application for disability insurance benefits and supplemental security income under §§ 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. Plaintiff sought review of the Administrative Law Judge's ("ALJ") decision and the Honorable John Thomas Reid issued a Report and Recommendation on August 21, 2006 (Doc. 8), which recommended the Commissioner's decision be reversed and remanded. This matter is currently before the Court upon defendant's Objections to the Recommendation and Report (Doc. 9); plaintiff filed a Reply (Doc. 10). For the reasons set forth below, defendant's objections are overruled, and the decision of the Commissioner is reversed and remanded.

## I. Standard of Review

The standards the Court must employ when reviewing objections to a recommendation and report are clear.[1] Only those portions of a recommendation and report identified as

---

[1] *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72.

objectionable will be reviewed.[2]  The review of those identified portions is *de novo* and the Court must "consider relevant evidence of record and not merely review the magistrate judge's recommendation."[3]

## II. Discussion

Defendant objects to portions of the Report and Recommendation that conclude that the Commissioner's decision should be reversed and remanded because the ALJ applied the incorrect legal standard at step three, in determining whether plaintiff's impairments equaled the criteria of Listing 1.02A.[4]  In his Report and Recommendation, Judge Reid found that the ALJ incorrectly stated that "an 'equals' finding under the regulations requires such opinion from a qualified program physician."  Furthermore, the ALJ found and relied upon the fact that "the only such physician of record, the state agency medical consultant, specifically found no listed impairment was met or medically equaled."

The ALJ indeed applied an incorrect legal standard.  While the ALJ must <u>consider</u> the judgment of a physician or psychologist designated by the Commissioner in determining medical equivalence, a finding of medical equivalence is not based solely on the opinion or judgment of such qualified program physician.  Rather, a finding of medical equivalence must be based on medical findings,[5] which include "symptoms (the claimant's own description of his impairments), signs (observations of anatomical, physiological and psychological abnormalities

---

[2]*See Garcia v. City of Albuquerque*, 232 F.3d 760, 767 (10th Cir. 2000); *Gettings v. McKune*, 88 F. Supp. 2d 1205, 1211 (D. Kan. 2000).

[3]*See Griego v. Padilla*, 64 F.3d 580, 584 (10th Cir. 1995) (citation omitted).

[4]20 C.F.R., Pt. 404, Subpt. P, App. 1 (Listing of Impairments).

[5]20 C.F.R. § 404.1526; *Kemp v. Bowen*, 816 F.2d 1469, 1473 (10th Cir. 1987).

which are shown by clinical diagnostic techniques) and laboratory findings."[6]  The ALJ is to compare the symptoms, signs and laboratory findings with the medical criteria shown with the listed impairment.[7]  Listing 1.02A states

> Major dysfunction of a joint(d) due to any cause: Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (*i.e.* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

And, Listing 1.00 states in part,

> A. *Disorders of the musculoskeletal system* may result from hereditary, congenital, or acquired pathologic processes.  Impairments may result from infectious, inflammatory, or degenerative processes, traumatic or developmental events, or neoplastic, vascular, or toxic/metabolic diseases.
> B. *Loss of Function*
>
> 1. *General.*  Under this section , loss of function may be due to bone or joint deformity or destruction from any cause; miscellaneous disorders of the spine with or without radiculopathy or other neurological deficits; amputation; or fractures or soft tissue injuries, including burns, requiring prolonged periods of immobility or convalescence.

While the ALJ appropriately reviewed the evidence and found that plaintiff's impairments did not meet the listing requirements for major dysfunction of joints, loss of function due to amputation or deformity, or disorders of the spine, the ALJ did not discuss a number of symptoms, signs and laboratory findings in the context of whether their severity

---

[6] *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) (citing 20 C.F.R. § 404.1528).

[7] Social Security Ruling 96-6p, 1996 WL 374180, at * 3 (July 2, 1996).

rendered plaintiff's impairments medically equivalent to these listings.  This medical evidence included treatment notes documenting calcaneal spurs in plaintiff's ankle, marginal erosion of the first metatarsal, bilateral osteophyte formations in his feet, tenderness about the knees, gouty arthritis, and plaintiff's reported symptoms of pain in his legs and hands and difficulty ambulating.  Other medical evidence mentioned by the ALJ includes instances in which physicians noted that plaintiff had little difficulty ambulating, and that plaintiff's reliance on a cane or assistive device was minimal.  But as Judge Reid noted, the Court is not in a position to, weigh the evidence and attempt to determine whether plaintiff's impairments medically equal the listing, for the Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."[8]

Defendant argues that the ALJ's failure to articulate the basis (or a correct basis) for his conclusion at step three can be harmless error when the ALJ's detailed findings at steps four and five make evident that plaintiff's impairments do not meet or equal the listings.  In *Fischer-Ross v. Barnhart*,[9] the Tenth Circuit held that an ALJ's conclusory finding at step three was harmless error when, based on the ALJ's confirmed and indisputable detailed findings at steps four and five, no reasonable factfinder could conclude that the claimant met or equaled the listings at step three.[10]  In *Fischer-Ross*, the ALJ found at steps four and five, that the claimant retained "the primary postural capacities, i.e., sitting, standing, walking, for sedentary, light, and even medium

---

[8]*Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

[9]431 F.3d 729, 735 (10th Cir. 2005).

[10]*Id.*

work," which the court found "conclusively negate[d] the possibility of any finding that Claimant is presumptively disabled under the pertinent listing."[11]  Notably, the court in *Fisher-Ross* found this factual situation distinguishable from that in *Clifton v. Chater*,[12] where the ALJ's step four and five findings that claimant's RFC was for a limited range of sedentary work, did not "suggest an explicit, definitive basis for rejection of the listings."[13]  Here, the ALJ found that plaintiff could perform a "wide range" but not the "full range" of sedentary work.

Moreover, in *Fisher-Ross*, the ALJ made detailed and narrative RFC findings at steps four and five that quoted, parroted or could be tied to the language in the listings.[14]  Here, the ALJ's findings at steps four and five do not reference or discuss the criteria in Listing 1.02A or 1.00.  The ALJ found that the "claimant's combined impairments do not result in the requisite degrees of anatomical deformity, bony abnormality, joint dysfunction, neurological deficits, or ambulatory deficits sufficient to meet the specific severity requirements of Section 1.02A or any other musculoskeletal impairment under Section 1.00."  But the ALJ offered no other discussion or analysis of signs, symptoms or laboratory findings in the context of whether this evidenced equivalency to the required criteria of the listing.

Furthermore, the ALJ did not merely err by making a conclusory finding at step three, he erred by stating that medical equivalence must be proved by the medical opinion of a program physician.  And, it is not clear from the ALJ's decision that he nonetheless appropriately

---

[11]*Id.*

[12]79 F.3d 1007 (10th Cir. 1996).

[13]*Fisher-Ross*, 431 F.3d at 734.

[14]*See id.* at 734–35.

5

considered all of the medical evidence in determining whether there was medical equivalence.

Thus, Defendant's objection is overruled denied and the Court accepts the August 21, 2006 Report and Recommendation of Magistrate Judge Reid, and adopts it as its own.

**IT IS THEREFORE ORDERED** that Defendant's Objection to the Recommendation and Report of U.S. Magistrate Judge (Doc. 9) is denied.

**IT IS FURTHER ORDERED** that the August 21, 2006 Report and Recommendation (Doc. 8) shall be adopted by the Court as its own.

**IT IS SO ORDERED.**

Dated this 4th day of October 2006, at Topeka, Kansas.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge